**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS ESPINOSA, et al., | |
| Plaintiffs, | No. C 11-02282 JSW |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, et al., | **ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| Defendants. | |

## INTRODUCTION

This matter comes before the Court upon consideration of the Motion to Dismiss the First Amended Complaint ("FAC"), filed by San Francisco Police Inspector Michael Gaynor ("Gaynor"), San Francisco Police Inspector Velarde ("Velarde"), Assistant District Attorney J. Michael Swart ("Swart"), and the City and County of San Francisco ("City"). The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The Court VACATES the hearing scheduled for December 9, 2011, and it GRANTS IN PART AND DENIES IN PART the motion to dismiss.

//
//
//
//
//

# BACKGROUND[1]

Plaintiffs, Carlos Espinosa ("Espinosa") and Naomi Gerada Cerrato ("Cerrato") (collectively "Plaintiffs"), allege that, "[p]rior to November of 2009," Swart, an assistant deputy attorney with the San Francisco District Attorney's office, was prosecuting a murder case, *People v. Manuel Castro* ("the *Castro* case"). (FAC ¶ 11.) At that time, Plaintiffs were in Texas, in the custody of immigration authorities, because they were awaiting voluntary deportation to Honduras to be reunited with their children. (*Id.* ¶ 12.) Swart directed Gaynor to go to Texas to interview Plaintiffs as potential witnesses in the *Castro* case. "As a result of the interviews ... Swart ... believed that Plaintiffs were potential witnesses to the crime, and that it would be to the advantage of the prosecution to secure their custody, and to sequester them from the San Francisco Public Defenders which was defending Mr. Castro." (*Id.* ¶ 13.) Accordingly, Swart directed Gaynor to take custody of the Plaintiffs and return them to San Francisco to be jailed. (*Id.* ¶ 14.)

Plaintiffs also allege that, in order to gain an advantage over the defense in the *Castro* case, Swart kept the fact that they had been jailed as material witnesses a secret, and that he never brought them before a judge to assess the necessity of continued confinement or the possibility of release on bail. (*Id.* ¶ 18.) Plaintiffs assert that in doing so, Swart violated the provisions of California Penal Code §§ 881(c)(d), and 1332(d). Plaintiffs asked Swart to get them an attorney, but he told them they did not have the right to an attorney and refused to provide any assistance. (*Id.* ¶ 22A.) Plaintiffs also contend that Swart never informed the court in the *Castro* case that Plaintiffs were in custody, even though the case was continued several

---

[1] Because the remaining claims that are at issue in this motion are claims brought against Swart, *see* note 2, *infra*, the Court only sets forth the factual allegations that pertain to Swart. Defendants submit a request for judicial notice with their reply brief, in which they ask the Court to take judicial notice of documents filed in a state court case that underlies Plaintiffs' allegations in this case. Because those documents were not material to the Court's resolution of this motion, the Court DENIES AS MOOT the request for judicial notice.

2

1 times. (*Id.* ¶ 27.)[2] Plaintiffs were confined for a total of eighty-four days, from November 16,
2 2009 through February 8, 2010. (*Id.* ¶ 26.)

3 At issue are Plaintiffs' claims against Swart, pursuant to 42 U.S.C. § 1983 for alleged
4 violations of their rights to procedural due process, their right to be free from unlawful seizures,
5 and their right to a familial relationship.[3]

**ANALYSIS**

**A.     Applicable Legal Standard.**

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[2] The paragraphs the Court has numbered 26 and 27, are numbered 19 and 20 in the FAC. This is a result of the fact that, after paragraph 22, Plaintiffs duplicated paragraph numbers 16-22.

[3] Defendants also moved to dismiss Plaintiffs' claims for violations of California Civil Code § 52.1, intentional infliction of emotional distress, and negligence. In their reply brief, Defendants withdraw the motion as to the Section 52.1 claim. Therefore, the Court DENIES AS MOOT the motion to dismiss that claim.

Plaintiffs concede that the claims for intentional infliction of emotional distress and negligence should be dismissed, but reserve their right to seek damages for emotional distress if they prevail on other claims. Based on Plaintiffs' concession, the Court GRANTS the motion to dismiss the claims for intentional infliction of emotional distress and negligence.

3

*Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.... When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.    The Court Denies Swart's Motion to Dismiss.**

Swart moves to dismiss Plaintiffs' Section 1983 claims based on the defense of absolute prosecutorial immunity from suit. Prosecutors who seek absolute immunity bear the burden of proof, and they enjoy a presumption of qualified immunity, rather than absolute immunity. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993); *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). As set forth above, Plaintiffs' claims derive, in part, from the decision to hold them as material witnesses in the *Castro* case. The Ninth Circuit has not squarely addressed whether such conduct would entitle a prosecutor to absolute immunity, and, out-of-circuit authority on this issue is in conflict.[4] It is, however, well-established that absolute or "quasi-judicial" immunity protects a prosecutor from civil, monetary liability for injuries that arise out of the

---

[4] *Compare Cousin v. Small*, 325 F.3d 627, 631-37 (5th Cir. 2003) (concluding, on summary judgment, that defendants were entitled to absolute immunity), *Daniels v. Kieser*, 586 F.2d 64, 69 (7th Cir. 1978) ("Because defendant was attempting to secure [plaintiff's] presence at the resumption of the trial, we must consider that he was functioning as an advocate rather than as investigator or administrator."), *Betts v. Richard*, 726 F.2d 79, 80-81 (2d Cir. 1984) (on summary judgment, finding that defendant was entitled to absolute immunity based on decision to obtain material witness warrant to secure testimony at ongoing trial), and *DeBoer v. Martin*, 537 F. Supp. 1159, 1162-63 (N.D. Ill. 1982) (finding defendants were entitled to absolute immunity because "conduct in causing subpoenas and arrest warrant to be issued against [witness] were taken in furtherance of prosecuting and presenting the State's case"), *with Odd v. Malone*, 538 F.3d 202, 212-17 (3rd Cir. 2008); *Redcross v. Rennselaer*, 511 F. Supp. 364, 370-72 (N.D.N.Y. 1981) (concluding defendant was entitled to, at most, qualified immunity in connection with allegations by witness to underlying crime that she was unlawfully detained and interrogated); *see also Vargas v. Maranda*, 2009 WL 1769849, at *5 (E.D. Cal. June 23, 2009) (denying motion to dismiss based on absolute immunity because "underlying facts are not fully developed," and noting conflict in authority on issue).

4

prosecutor's execution of duties that are "intimately associated with the judicial phase of the criminal process." *Imbler*, 424 U.S. at 430.

The immunity is quasi-judicial because it protects prosecutors when they make discretionary judgments, similar to those made by a judge, on the basis of evidence presented to them. *Id.* at 423 n. 20. In the prosecutorial context, absolute immunity: (1) allows prosecutors to "focus their energies on prosecuting rather than defending lawsuits;" (2) enables prosecutors to "exercise independent judgment in deciding which suits to bring and conducting them in court;" (3) preserves "the criminal justice system's function of determining guilt or innocence by ensuring that triers of fact are not denied relevant (although sometimes conflicting) evidence because of prosecutors' fear of suit;" and (4) ensures fairness to defendants "by enabling judges to make rulings in their favor without the subconscious knowledge that such ruling could subject the prosecutor to liability." *Id.*

Absolute immunity only applies to a prosecutor's "special functions," *i.e.* those functions closely associated with the prosecutor's duties as an advocate for the State. *Id.* The inquiry into which functions are prosecutorial, and thus immune, focuses on the nature of the function performed rather than the identity of the actor who performed it. *Buckley,* 509 U.S. at 269. Nor should any weight be given to prosecutorial intent in the immunity inquiry. *Ashelman v. Pope,* 793 F.2d 1072, 1078 (9th Cir. 1986) (en banc). The issue is not the harm that the conduct may have caused, but the nature of the conduct for which immunity is claimed. *Buckley,* 509 U.S. at 271. So long as the prosecutor is acting in his role as an advocate for the State, his actions are protected, even if his actions are malicious or dishonest. *Imbler,* 424 U.S. at 428.

Thus, a prosecutor is absolutely immune for initiating a prosecution and presenting the State's case. *Id.* at 431. In addition, a prosecutor is absolutely immune when: deciding whether or not to prosecute, *Roe v. City and County of San Francisco,* 109 F.3d 578, 583 (9th Cir. 1997); preparing and filing an information and a motion for an arrest warrant, *Kalina v.*

5

*Fletcher*, 522 U.S. 118, 129 (1997)[5]; preparing for trial, *Broam v. Bogan,* 320 F.3d 1023, 1028-29 (9th Cir. 2003); and appearing in court to argue a motion, *Burns v. Reed,* 500 U.S. 478, 492 (1991). A prosecutor's immunized duties will involve actions preliminary to the initiation of a prosecution and acts apart from the courtroom. *Imbler,* 424 U.S. at 431 n. 33. A prosecutor also is absolutely immune from claims that the prosecutor failed to investigate the accusations against a defendant before filing charges; for the knowing use of false testimony at trial; and for deciding not to preserve or turn over exculpatory material. *See, e.g., Broam*, 320 F.3d at 1029-1030 (internal citations omitted) (summarizing several circuit court opinions upholding absolute prosecutorial immunity in cases where a prosecutor was sued for deliberately withholding exculpatory evidence or using perjured testimony).

Again, although the Ninth Circuit has not squarely resolved the issue, it has held that "when a prosecutor seeks a material witness warrant in order to investigate or preemptively detain a suspect, *rather than to secure his testimony at another's trial*, the prosecutor is entitled at most to qualified, rather than absolute, immunity." *al-Kidd v. Ashcroft*, 580 F.3d 949, 963 (9th Cir. 2009), *rev'd on other grounds*, 131 S.Ct. 4021 (2011), 963 (emphasis added). Thus, *al-Kidd* provides some support for the conclusion that the Ninth Circuit would find that a prosecutor is entitled to absolute immunity if he or she sought and obtained a material witness warrant for the purpose of securing testimony at a trial. This conclusion finds further support in *Genzler v. Longanbach*, 410 F.3d 630 (9th Cir. 2005), a case on which the *al-Kidd* court relied.

In *Genzler*, the plaintiff's claims rested, in part, on an interview of a witness and the allegation that the prosecutor pressured her to fabricate evidence. The defendants moved for summary judgment on the basis of absolute immunity. The Ninth Circuit noted that, with respect to witness interviews, "[t]iming is ... a relevant, but not necessarily determinative factor." *Id.* at 640; *see also Buckley*, 509 U.S. at 274 ("[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested").

---

[5] In the *Kalina* case, the Supreme Court noted that the prosecutor was acting as a witness, rather than an advocate, when she was the sponsoring witness for a Certification for Determination of Probable Cause, and it concluded that conduct was not protected by absolute immunity. 522 U.S. at 129-131.

6

1  The *Genzler* court also noted that another relevant factor was whether the "character of the
2  meetings was more in the nature of quasi-judicial advocacy or police-type investigative work."
3  *Id.*; *see also Buckley*, 509 U.S. at 274 n.5 ("[A] determination of probable cause does not
4  guarantee a prosecutor absolute immunity for all actions taken afterwards.  Even after that
5  determination ... a prosecutor may engage in 'police investigative work' that is entitled to only
6  qualified immunity.'").  The Ninth Circuit concluded that there was sufficient evidence in the
7  record to conclude that the prosecutor was acting in an investigative capacity during witness
8  interviews and, thus, held that he was not entitled to absolute immunity.  *Genzler*, 410 F.3d at
9  639-43.

10  In addition to *al-Kidd*, Swart relies heavily on the *Cousin* case in support of his
11  argument.  In that case, after the plaintiff had been arrested and charged with murder, the
12  prosecutor was alleged to have directed defense witnesses to his office and to directed them to
13  remain there for the duration of the plaintiff's trial.  The court determined that, although this
14  conduct was unlawful and improper, the "conduct was directly related to the trial process, was
15  entered into in the context of an ongoing trial, and was designed to secure a conviction[.]" *Id.* at
16  636-67.  Thus, the court determined that "it cannot be characterized as anything other than
17  advocatory," and it concluded that the prosecutor was entitled to absolute immunity.  *Id.* at 637.

18  Plaintiffs, in turn, rely on the *Odd* case, in which the court concluded that the
19  prosecutors were not entitled to absolute immunity on suits brought by plaintiffs who had been
20  arrested as material witnesses and detained for over fifty days.  The Third Circuit noted the
21  "fact-intensive" nature of the inquiry into prosecutor's function and it "focuse[d] on the unique
22  facts of each case and" carefully dissected the defendants' actions.  *Odd*, 538 F.3d at 208, 210.
23  With respect to one plaintiff, who acknowledged that the defendant "was acting in her
24  prosecutorial capacity when she secured the material witness warrant for [the plaintiff's] arrest,
25  the court concluded that the prosecutor's failure to apprise the judge who issued the warrant of
26  the status of the underlying litigation, in direct contravention of the judge's order, including the
27  fact that the case had been continued for approximately four months, was "primarily
28

administrative." Thus, the court concluded that the claims should not have been dismissed on the basis of absolute immunity. *Id.* at 213-14, 217.

With respect to the second plaintiff, the court concluded that, because the underlying litigation had been dismissed, the prosecutor's failure to inform the judge of that fact was administrative in nature and, thus, did not entitle the prosecutor to absolute immunity. The court also noted that, under the facts alleged, "the policy considerations underlying prosecutorial immunity against recognizing absolute immunity in these cases." *Id.* at 217. As such, the court concluded that each of the plaintiffs had stated viable claims under Section 1983. *Id.* at 215-17.

Here, Plaintiffs allege that "[p]rior to November 2009, ... Swart ... was prosecuting" the *Castro* case. (FAC ¶ 11.) However, Plaintiffs also allege that "Gaynor, at the direction of ... Swart, went to Texas to interview the plaintiffs as potential witnesses regarding a murder case he was investigating," *i.e.* the *Castro* case. (*Id.* ¶ 13.) In addition, Plaintiffs allege that during the eighty-four (84) days of their confinement, the *Castro* case "came on calendar on various occasions including requests to continue [Castro's] preliminary hearing." (*Id.* ¶ 20.) Thus, although it appears that the *Castro* case was beyond the investigatory phase and that Swart obtained the material witness warrants to secure Plaintiffs' testimony for trial, the Court cannot say as a matter of law that his conduct falls entirely within his role as an advocate, rather than as an investigator or administrator. Accordingly, the Court DENIES Swart's motion to dismiss. However, the Court's ruling is without prejudice to Swart's assertion of an absolute immunity in the context of a motion for summary judgment.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART, Defendants' motion to dismiss the FAC.

**IT IS SO ORDERED.**

Dated: December 6, 2011

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

8